The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, thank you very much. Pleased to be seated. The next case is USA v. Triple Canopy. Ready to hear, Mr. Scarborough. May it please the court, good morning, Your Honor. Charles Scarborough, Department of Justice for the United States. I'd like to try to preserve three minutes for rebuttal, if possible. You can try. In this false claims act case, the United States alleges that defendant, Triple Canopy, fraudulently billed the Army for guards to protect a military base in a dangerous area in Iraq, while knowing that the Ugandan nationals that it was supplying to perform this critical function had not passed a basic marksmanship test required. Was this the breach of an express provision of the contract? Yes, Your Honor. What provision was that? It's embodied in the task order. That's at JA-99. It's at the very bottom of the page. Is there any dispute that this is an express requirement of the contract? No, Your Honor, I don't believe there is. And that requirement was what? Just generally? It's that they passed a marksmanship test. Basically, these people are going to basically replace Marines. It's just that they have to pass the marksmanship, or qualify. An objective test. They have to hit 23 out of 40 at a target at a specific range with the guns they were going to carry. Is every breach of contract a false claim? Absolutely not, Your Honor. What makes the difference? The difference here is the knowledge and the falsity that underlies it. Because not only here, the TCI sort of billed for something that the government, that didn't meet the specifications that the government had bargained for, they also engaged in an extensive campaign to falsify that by falsifying the marksmanship scorecards, which shows not only that they knew, but also that they knew that this was something that the government cared about. In other words, that it was a condition of payment, that it was relevant, to use other terminology from the False Claims Act world, that it was material. Did the government know about any of the falsifications until after the fact? No, Your Honor. In other words, they wouldn't have been paid. And the complaint makes that very clear at many places. It says specifically, all over the complaint, basically, that if we knew that these guys had not passed the marksmanship test that we contracted for, that we would not, in fact, have paid for these people. And that makes perfect sense. Were the files available to the government? Yes, Your Honor. The files were available, but they were falsified. Were they ever reviewed by the person to whom they were made available? There are extensive allegations that that was what was required under the contract. I don't think that answers the question. Well, but here's the point, Your Honor. No, no, no, no. The point is you have to answer my question. Was there ever a review of these falsified documents in the records by the government person tasked to do such a review? Did they ever look at the records? The reason why I'm answering the way I am, Your Honor, is not to evade the question, but it's because we're at the pleading stage. And so what matters is what is alleged in the complaint. Any alleged one. And what is alleged in the complaint, and, again, what we have to show is that the falsified records were capable of influencing the government's payment decision, not that the government actually relied on. That's perfectly clear from the statute and from this Court's decisions in Harrison. So here's some things that are alleged in the complaint, which goes to your question. There's no allegation either way that the person could have or couldn't have. The point of your argument is that's not necessary. You just have to say it affected the payment decision. That's correct, Your Honor. And let me sort of give you some of the things that are in the complaint that show that it was clearly capable of influencing. Okay. It affected the payment decision because the contractor didn't tell the government about it. Well, even worse than that, the contractor falsified, basically lied about the fact that these guys had passed the Marchman test when they hadn't and repeatedly did this on a monthly basis. This is an ongoing thing. There's no evidence or allegation that the government saw that information and didn't rely on it. That's what I'm trying to get to is that the allegations here are that, first of all, that the contract says that the scorecards had to be in the file. This is all going to whether it's capable of influencing the government's payment decision, that the officials were required to review the files. The falsification of the documents, is that essential to your argument? No, it's not, Your Honor. It's helpful to your argument. It's absolutely helpful to our argument. It's not essential. No, no, Your Honor. And, I mean, to the extent that you want me to respond to that right now. You just did. Well, let me expound upon that because the core part of our argument is that we did not get what we bargained for. What we bargained for was guards who could shoot straight. In the same way when the government, you know, asks for gasoline with an octane, I'm using an example from the SAIC decision in the D.C. Circuit. You ask for gasoline with an octane rating of 89 and someone supplies an octane rating of only 87, if you know about that and you submit it to the government, it doesn't matter what you say on the face of the claim at all. You are submitting something that you know that the government has not bargained for, and that's the very essence. Has there been a certification in this case? A statement on which the government can't rely? You know, factor four of the requirements. Has there been a statement? Well, there have been statements. There were the statements in the scorecards. There are also statements on the claims themselves that we are giving you guards, which in this context we believe constitute express false statements on the face of the invoice. Now, the district court- Well, they are guards, aren't they? Well, they're guards. They're guards that can't shoot. And I think that's the fundamental problem here, Your Honor. In this context, we made very clear in the contract that we need guards who can shoot. You can't just say we're just-it's sort of like your scrap case. We're giving you people that essentially can't do the essential function that we want them to do. But we don't need-our point is that while we have that express false statement, and you may agree or not as to whether that's sufficiently expressed- How do you answer? I just looked at, from the Westinghouse-Savannah River case, factor number four basically. The statement or conduct caused the government to pay out a claim. How do you qualify there? Well, again, we clearly have that in the sense that when the invoices are submitted, they're saying pay us. Do you think the invoice- The invoice is one part of it. And, again, we also think that the statement-and, again, you brought up- What else is there other than the invoice? Well, there's the falsified scorecards. And, again, you brought up Harrison, which I think is- That falsified card didn't cause you to be paid, did it? Well, yes, Your Honor. Absolutely, it did. It was necessary to basically put those cards into the file. That was a requirement of the contract as well. Those were some of the things- If they had not asked for payment over that, would you have a false claim? No, there has to be some nexus to payment. That's what materiality is all about. So it's the invoice that you look to as a statement, isn't it? No, Your Honor. Well, that can be. That is one thing- I just want to get this straight. Okay. So by falsifying their records and putting that in their file, if that's all that happened and you never got any request for pay after that, that would it be a false claim then? No, Your Honor. It says a statement or a conduct that caused the government to pay out a claim. So how is it anything other than the invoice? Okay. Can I try to respond to that? Sure, Your Honor. The provision that we're talking about for the false- there's provisions here, A1A and A1B. For the false statements, the falsified scorecards, what we are relying on is A1B claim. And I want to read the language because the language is actually very important. It's knowingly makes uses or causes to be made or used a false record or statement material to a false or fraudulent claim. Our point is that these scorecards, which the contract required you to put in there, which everyone knew contracting officers, auditors, and other people were going to look at to decide- Isn't that a false statement? Yes. Doesn't underlie that, but how does that underlie the false claim? Because in order to get your claims paid that you submit later, you have to have those statements in there. Do the statements have to be known to the government? Yes, Your Honor. Well- Again, Your Honor- Yes, and it's a false claim because it has to cause the government to pay. Isn't that- The nexus- I'm not trying to bite you, but doesn't it say it has to cause the government to pay? The nexus is materiality. And as this court said in the Harrison case, again, there was a materiality issue there. And it was the false statements at the beginning were about a conflict of interest. The issue here is not materiality, I don't think. Well- It's clearly material. Well, I agree with you, Your Honor, on that. But I'm talking about- But you have an answer that I start- And then I'm going to leave you alone. But I ask you about the statement of conduct caused the government to pay out a claim. Pay out a claim is the operative word, isn't it? A phrase, isn't it? Well, Your Honor- That makes you false. Claim A. I think you're focused on A1A, the language there. And that's why I read you the language from A1B. Under A1A, we don't have to show a false statement of any kind. It's sufficient that, you know, the government doesn't get what it's bargained for. So that's why I'm saying that, you know, this is not a necessary part of our claim, that the fact that there were falsified scorecards. If they had just basically not given us guards and they had not said anything on the face of the payments, we would still win the case. But we have more is the point here. And the point is also that materiality is defined in the statute. And it means having a natural tendency to influence. There can really be no argument here that these falsified scorecards weren't capable of influencing the government's payments decision. If they didn't have the falsified scorecards, would this just be a breach of contract? No, Your Honor. That's what I'm trying to say is that it would be an A1A case only. We would not have an A1B claim because we would not have any false statements. And, again, I'm assuming that you're going against us on the notion that, you know, the claim about the guards saying billing for guards is not an express false statement. We think that is expressly false as well. So there's sort of three independent ways in which we think we win this case. Your only allegation that they did not function contractually as guards is that they did not fulfill this marksmanship requirement. Yes. I would object to the characterization as only, yes. They didn't do the main thing that guards are supposed to be able to do, which is to shoot straight. There's no allegation in here that a bunch of Taliban showed up one day and they shot at them and they missed. None of that matters, Your Honor. Again, it goes back to the very essence of what the False Claims Act was enacted in the Civil War to prohibit. You aren't claiming that the guards didn't show up for work. No, we're not, Your Honor. But your claim – he's asked only – isn't your claim here based on they weren't guards because they couldn't do the express contract provision requiring the marksmanship qualification? Yes. Is there anything more than that? Well, the more to that is there is knowledge and that they – I don't know more to your claim. Your claim is over, isn't it, that they weren't qualified by virtue of their inability to shoot properly. That's the only part of it, isn't it? That's correct. But again, I guess I'm sort of objecting to the only part because that's like the very essence of what we asked for here. And again, the purpose of the False Claims Act – We ask you if that's the only proof that you have. Okay. We ask you if that's all that you're complaining about. I don't mean to be fighting unnecessarily with the court. I'm not trying to. So my point was to try to go back to the purpose of the False Claims Act. You were talking about the purpose of the CERCLA earlier. Is a certification required? No, Your Honor. A certification is absolutely not required. And this court's decision in Harrison makes that clear. And that's sort of the fundamental first step error. The district court said you need to have an objectively false statement on the face of the claim. That is just patently not true under the Harrison decision where – I mean, it rejected a district court decision that said that very thing. If you do, a certification is required. You have the law wrong. This is an if. Is there any certification in this case? Well, we think that – I don't know whether you're using certification as a term of art. We think that there is an expressly false statement in the invoices themselves. That is the guards. We're giving you guards. I know. And we think that in this context, you weren't giving us guards, not least guards that did what we think – Is there any certification in the invoice requesting payment? That is in the invoice requesting payment. Again, that's a – The invoice says the guards can do what they want. No, no, no. They don't say expressly. They say we're giving you guards. And we think that – They say that in the invoice? They do. But our point is that that's not necessary. Often you just say pay me now. And that if you know that what you're asking for payment for, if you know, that's an important part, that it doesn't meet the – Do you want to take time off your rebuttal? I would probably prefer to go to the end. Okay. Thank you very much. Thank you. We reserve some time. Mr. Mayfield? Thank you. Good morning, Your Honor. I'm pleased to court Trey Mayfield for the relator Omar Bader. The government and its brief have addressed, I think, at length the requirements of B-1 and B-2 – Excuse me, A-1 and A-2. The guards that we've talked about, the district court, as I recall, seems to have at least latched on to the fact that the contract itself did not define guards. Where did the definition for the fact that they had to be qualified in a certain way come from? In the task order 11, Your Honor, it specifically says they have to get 23 out of 40. A person who can't do that is not a guard. It's simply a person. And that comes on one of the documents. Is that document a part of the record? It's referenced explicitly in both the government's complaint and the relator's complaint, Your Honor. Is the document a part of the record? It is at this point because it was submitted by TCI in rebuttal. But under normal pleading – It's not before the district court. Oh, it certainly was. It was before the district court. And as you know, under the pleading rules, any document that's expressly referenced in the complaint is considered part of it for dismissal purposes. So to go to your point, Your Honor, these were not guards. These were just simply people. There was not a – in fact, we allege and the government alleges that not a single guard ever showed up at Al-Asad. Not one. They just simply brought in Ugandans. The contract was not for Ugandans. It was not for people who could pick up a rifle. It was not for people who showed up for work every day. It was for people who could get 23 out of 40 just as any U.S. soldier could. If you could get 23 out of 40, it would be enough, wouldn't it? Wouldn't that be sufficient? Yes. And that did not happen here, Your Honor. Not once. It had nothing to do with Ugandans or anybody else. It's just that what – I don't want to get hung up in the definition of guard. But the truth is – that's why I asked the first question. Was there an express condition about marksmanship? I was told yes. You say yes. Yes. And that wasn't met. Correct. Does it matter if you call somebody a guard or not? Well, it does matter because if you're asking for payment for guards as opposed to mowing the lawn and you don't get paid – or rather you do pay for a guard and you didn't get a guard, then you've been alleged. They were asking for payment for mowing the grass in this case. No. They're apparently alleging that they were getting payment for – we're alleging that they asked to be paid for guards when they provided them guards. Does that have anything to do other than those people standing there performing the duty of security service? Did this contract have to do with anything else? No. In the same manner that if I have a Medicaid contract for a doctor to provide a service and instead a nurse provides a service, that would be an express lie. Are his claims particular enough as to other bases and other circumstances? They certainly are, Your Honor, and that's what I was going to get to. Under this court's decision in Glenn v. EDO Corporation just last year, the court specifically said there is no requirement of firsthand knowledge. There's nothing in Rule 9b that requires that. There's nothing in the False Claims Act that requires that. I didn't ask you that. I asked about particularity. You do have particularity, Your Honor. Based on his experience at El Assad, he knows that all of these guards, every single one of them, was not qualified to be guards. They weren't guards. They were simply people. And he knows that they were shipped off to other bases and they still weren't qualified. And as the complaint makes clear... How would he know if they were qualified or not when they got to the other bases? Because if you read the complaint, Your Honor, it expressly says that's the qualification for the contract. And that's why on the final month they were being re-upped. They were filling out these cards falsely so that they could go to the other bases. And then we're getting to a question of proof. How does he know that? Well, he knows because he talks to his fellow guards who ended up being shipped to the American guards, the supervisors. He speaks to them. But you don't have to allege that at the pleading stage. It's enough that he says that he knows it. These people can't do the job here. And then TCI falsifies the records precisely so they can go somewhere else and meet the same kind of contract. And in Glenn... He doesn't know. He infers it from prior activities that that would be the fact in the future. Well, no. With respect, actually, to the very last set on the range, Your Honor, the Ugandans were put out there precisely so that they could be qualified for subsequent contracts because at that point the Al-Asad contract had been canceled. It had been given to another subcontractor. And so at that time it was expressly known by all of the Americans that these guards were being falsely qualified for another duty station in Iraq. Mr. Bader then learned from his American colleagues that they, in fact, did show up, the exact same people still unable to shoot with the false qualifications in the jacket. That was the very reason it was done. And as the court said in Glenn, there's no requirement that you experience any of this firsthand. Think about what that would mean for the False Claims Act if we required that a relator personally experience every falsehood that he alleges. Well, no one could ever bring a False Claims Act unless it was in the very smallest possible company. A relator can hear things firsthand, secondhand, thirdhand. It doesn't matter. What matters is that he brings to the court a set of allegations that plausibly raise the inference that a fraud has occurred and that the United States has paid for that fraud. Thank you very much. Thank you. Ms. Lee. Thank you, Your Honor. I am Tara Lee for Appellee Triple Canopy. We have to begin with the premise that the False Claims Act is a fraud test. This is a fraud case, and fraud has to be pled with particularity. To plead fraud with particularity, case law has held you need the time of the misrepresentation, the place of the misrepresentation, and the contents of the misrepresentation, as well as the identity of the person making the misrepresentation and what was gained thereby. Let me ask you a preliminary question we didn't talk about earlier, and that is the district court here dismissed this matter without prejudice. That seems to indicate typically when you do that, you can come back to the district court. It gives you an opportunity to come back. You don't come here before that happens. Is this a final judgment? It is because the... Not just because you agree, which that doesn't make a difference. You agree, but... In this case, the government has elected to stand on their complaint. They have suggested by appealing and in their supplemental briefs in response to your questions that they're going to stand on the facts as they are and go forward. You can conclude they couldn't amend or that they don't want to amend, but the complaint is the complaint now, and we are here with what is now deemed final for purposes of being able to judge the appeal. It means they're not going to go back and change their facts. That might be because they don't have them, and they can't plead it with particularity, or it might be because they want to take this fact pattern and see if they can expand the law. For our purposes, it means we're here, and we can't be sent back to start over again at the beginning and do all this again if they amend later. Where we are now is here to decide with the court's gatekeeper function if this is good enough to get through 90 days. If there is a certification in support of this demand for payment, would you lose? The court below ruled that there was not, sufficiently alleged, a certification in support of the demand for payment under the contract. So if there were a certification, would the district court be wrong, and you would lose on this argument? I want to make sure I'm understanding the question correctly. You mean if the facts were completely different? No, exactly the same. If we were to find there is a certification, let's say, for instance, let me change one fact. I'll give you a hypothetical. If on that invoice it says we hereby certify that we have met every obligation under the contract, would that make it a different case? It would make it a different case, Your Honor. And so it would make a difference to the outcome of the case. It would make a difference to the outcome of the analysis of implied certification and express certification. I would suggest that however that analysis comes out, you would still need particularity. It would make a difference to the outcome of the case. In other words, the district court would be wrong, and this case could continue on. I don't think it would, Your Honor. It wouldn't change the outcome for the reason that I'm getting to, which has to do with 9B. 9B requires particularity in the... Leave aside 9B. Leave aside 9B. I just want to focus on this issue. If there was an express certification on that invoice, you with me? I hear you, Your Honor. That we've met every condition, would you be wrong in your argument? You would lose your argument. I don't think we would, Your Honor. And the reason is for the question that you posed earlier. Doesn't the fourth element of a false claims act case require some causation of payout to the government? I think they're missing that as well. Oh, the certification. That would be the certification in the invoice. We certify to you, government, we've met every condition. Pay us. And then the government would say, we're paying you based on that express certification. You would lose, wouldn't you? You would, Your Honor, but you don't have anything remotely like that. No, no, no, no. You have to answer that question first, though, and then we'll walk through it. I would say this is not an express certification case. I didn't ask you that. I said if the contract said that. If the invoice said that. If the invoice said, this is the same question I've been asking you, maybe I'm not being clear enough. If the invoice you gave said at the bottom, said this, by submitting this bill, invoice, we certify we've met every condition of the contract, and you signed it. That would be a statement which would support a false claims act, correct? I think it might be, Your Honor. But what I'm trying to point out is that where express condition cases have been upheld, it's been for a statute or regulation. I don't know of one where they looked at nothing other than the contract claims. So, in other words, you don't think that would make a false claims act case if the person knowingly misrepresented a material fact. I'm changing the circumstance a little bit. A material fact under the contract without some statute or regulation. You don't think that that would make a certification for a false claims act? I think you could do that, Your Honor. I'll tell you that I think you could make that the law. But what I'm saying is that not the law now. I don't think it is, Your Honor. I think when you look at an express certification case, they're going back to a regulation or a statute or some external obligation. They're looking at OCI obligations that trigger this affirmative obligation. So you would think that under the law, has it been decided that way, or you just say it's an open question, my hypothetical? I think the hypothetical you pose would be a case of first impression because this is the first time the government is trying to do this that I'm aware of. All right, first impression then. I'm asking this question, and then I'll let everybody else ask. I think I can answer it, Your Honor. Well, you haven't answered it yet. Well, I don't see how answering yes hurts you. It doesn't, Your Honor. Because this is, we can move on. It's just that this is, I don't think you should do that. All right, moving on. Would that be a statement or conduct which caused the government to pay out a claim? Yes or no? Yes, they would. They would have the causation. It would be the claim. But you would have to then be deciding that contractual obligations on their own can create express certifications. Does the certification have to be expressed? May it be implied? In this circuit, we haven't recognized implied certification. I think here. Are we denied that they exist? You have called into question, Your Honor. The circuit has said it's questionable. I would suggest to you that the – So it's first impression again in your mind? Well, it's not. I think the circuit court has had opportunities to opine on implied certification before. But it would be first impression as to whether we have to decide it. Well, I mean, so far it looks to me like you have – Okay, if you're going to argue about that, I'll just – I'm not, Your Honor. I'm just saying you've had the opportunity to decide on implied certification before. It's not the first time appellees have argued it with you. Or before it can find another way out. I think you can. And I think it's in 9B. I think it's really important that we focus on the fact that there's no cure here. Is there an express provision of this contract? Is there an express provision of the contract that the guards who are being paid for under this contract have to be in marksmanship, shooting? There is, Your Honor. It is one of 20, and the only place it appears – Did the guards in this case – I guess it's allegations. The allegation is that they did not. It's one of 20 contractor responsibilities laid out. Do you think – so we take that as a fact they didn't meet that requirement. I think you do in the allegations and the complaints. Well, that's where we are right now. Okay. Do you argue on materiality as to that? No, what I'm trying to get to, Your Honor, is that they don't have the particularity for the fraud. They don't have the hearer of the fraud. False is false when it's uttered. Fraud is fraud when it's heard. And the government is coming to you and saying, we can plead fraud with particularity without telling you who heard what when. Could you leave the particularity argument aside for a minute? You can get back to that, and you aren't forfeiting that. But I'm asking you, leave that aside for a second. Is there a false claim act without the particularity? I mean, if you take that off the table, is there a false claim act? As long as we're on the facts of the case and not the hypothetical where there's some kind of certification. On the facts of this case, they also fail in 12b-6. They don't have the fourth element. What they have focused on in materiality is just the third element. You know what? I asked you about materiality, not what they focused on. I asked you, is that material? That's what I asked you. In front of us right now is the failure to qualify. Do you argue the materiality of that? I'm not, Your Honor. I'm not. Okay, that's what I asked you. What else do you argue then other than the statement? Leaving aside particularity, is there anything else about a false claims case that you argue with as the case is in front of us right now? There is, Your Honor. Okay. If you want to focus on materiality from our argument. You just said you don't argue about that. Well, I think there's an important piece that's been missed. I thought you just said you don't argue. You aren't arguing about that. I do have one small point that I think will illuminate this a lot and is worth just focusing on. The government got up and argued to you that all over their complaint, they say the contracting officer's representative has a duty to look at these records. That's in the complaint at paragraph 25 and 28, and it's referred to 17 times in the argument. The paragraph they refer to is 7.4 of the task order. There's no such paragraph. Paragraph 7 of the task order, which is the contract, says the contracting officer's going to go look at three things. 7.1, weapons list. 7.2, ammo list. 7.3, monthly fuel usage report. Is the requirement that the guards be able to shoot properly, is that a material requirement of this contract? I can make an argument that it's not. I don't ask you to make an argument. Do you think it is or not? Just for purposes of your argument. Is it material or not? It can be, and we still prevail, Your Honor. I didn't ask you that. I don't understand either. You don't understand my question, or I don't understand your answer. I said, is that material? Is your argument that the guards can shoot properly, do you think, is your argument that is or is not material to this contract? I think that this contract lays forth the things that... Just answer it. It is material or is not material? Just tell me that. I think the argument that I want to make to you is that it's not. Is it material or is it not? No, Your Honor. May I explain why? Okay, that's fine. No, no, I take it that you challenge that. And here's why I want to challenge it, because what they're focusing on is this if-then-he-would-have sentence structure that puts the contracting officer with a duty to go look. They tell you to use the Almay case to presume that he actually went and looked, but they're filling in a gap they can't show you in the contract because 7.4 is not even there. 7.4 in the task order is what they say they're relying on for the contracting officer's representative who's going to go look at these records. They can't tell you he did, they can't tell you when, they can't tell you what they said, but they want you to believe that he did because they say it's at 7.4. I didn't ask you about any review of that. I just asked you do you say it's material to the contract that the guards be able to shoot properly. I didn't ask you about who has a requirement to review. I'm not asking any of that. I'm just saying do you think the fact that the guards have to be qualified to shoot, is that material to this provision of guards' contract? Here's why I'm saying no, Your Honor, because the contract lays out three things and only three things that the contracting officer's representative has as deliverables that he will inspect. 7.4 is not on the list. It might have been once because they're misciting it from somewhere, but it's not in this one. Why do you think that under this contract, I'm just asking, you provide guards who cannot shoot, cannot shoot, that you have met the contract? Here, the contract gives the contracting officer three things to look at. That's what you should look to to decide materiality. It would be dangerous to start deciding because one characteristic out of 20, I think searching cars is pretty important. I think badging is pretty important. I've been through these checkpoints. Those are a lot more important than can he shoot on a target when in the performance of those duties. Well, it may not be if you won't stop at the checkpoint. I hear you, Your Honor, but these are contract cases where the government decides what's material. I don't want to belabor anymore. You think that the ability to shoot straight, although it's an express provision requirement, it's just not material. That's fine. That's your argument. So you went on that argument. You went on materiality. Well, I think it's important if you're going to decide on materiality that you go to what the contract says about it to decide that, is my point, Your Honor. My point is you argue you went on materiality. What I would like to argue is that we went on the absence of causation. I didn't say that. Don't you argue you went on materiality? I think we could as well, but it's an alternate, not anywhere near my primary argument. I didn't suggest that it was. I'm going through the factors to try to see if there's any agreement. This is what I was doing. And if they can get through materiality, which I don't think they can because the 7.4 is not there. I know that. I guarantee we know you think they can't get through that. Then I think they have to show that there was some claim that came to be paid. And what they're trying to do is give you scenarios, two alternate ones, where you can find false claims at liability without anything but a contractual violation that they say was knowing. That's what we're trying to do. What else do you think is required? I think they have to attach it in some way to a submission. What about the invoice? That's what I was getting to on the certification. There's nothing false in the invoice, Your Honor. There's nothing in the certification in the invoice. Is there a certification in the invoice? There is not. I don't know if you said there's nothing in the certification or there is no certification. I missed it. There's not a certification in the invoice. There's not an express. Is the submission of an invoice an implicit certification that we should get paid because we have fulfilled the contract? That's not what case law that have recognized implicit certification have held it to be. In fact, that's been discussed by this circuit in God's name. Do you think had you attached to your invoice a comment that the guards we're asking you to pay for here cannot shoot, do you think you would have been paid? No, I don't, Your Honor. Why is it that? Why do you think that's so? Because that's a submission. And what you're missing in this case is... No, no, no, no. It wouldn't be a false statement. It would be a truthful statement. Here's our bill and we've attached to it a statement that the guards you're paying for our government cannot shoot. That's a true statement. That's not a false statement. You think you would have been paid? Your Honor, I wouldn't have been paid because that would be a breach of contract case. They would have issued a cure notice and they would have gone through all the mechanisms that already exist to make sure we weren't paid. You think that at least that argues for a breach of contract. It does. You just think that that's not elevated to a false claim. I think there's a lot of space between contract violation that you have alleged here and what you ought to have if you want to bring a false claim. This court has recognized that indeed. We are engaging in, of course, a legal argument here. We have to stick with it in terms of how this is put. The bottom line, when we look at the facts of this case, do you maintain that it's not fraudulent when you submit a claim for payment? Do you know the government wouldn't pay it if they knew these guards were not qualified? I'm saying this claim is not sufficient, alleged. I understand that in terms of the allegations of it, but I'm talking about the complaint here, the facts of it. You submit a claim for payment and you know when you submit that claim for payment your guards aren't qualified. You know the government won't pay it. You know that because you falsified records. You had people come up and say, oh, put down that he's qualified. There's a reason for it. So you know they care. And we have that set of facts, and we're at the pleading stage of this situation, and yet we're dealing with a very serious situation. This is cutting to the chase on this, and I don't know if we're going to go this implied matter or not in terms of certification, but we are talking about protecting American soldiers, and you got someone over there putting someone up there protecting them who can't even hold a rifle. Now, that may be something we can sit in here and argue in this court back and forth about how we're going to go on this thing, but the bottom line is we're at a pleading stage. I'm not saying if we go beyond that we can't get some more facts. And to get tied up on legalistic terms about express certification and whether or not we're going to recognize an implied one or whether the fact remains, those basic facts do exist, don't they? You did know that these guards were to be qualified. You didn't know that. You did know that you hired people who were absolutely not qualified, absolutely not, had no qualification whatsoever. They were put in a position of guarding an American base where there are soldiers up there. There's a reason they're there. They took money. They submitted payments to get money for it continuously, and to get those payments, they falsified records. No question about it, right? In fact, to relate us, they had him to come and put his name down that these people are qualified. Any of that wrong? One little spot. Anything wrong with that? One little spot. What is that? The part where you said they knew somebody was coming to inspect. No, no. Inspect? Or to review where you just said that they – I'm not talking about review. I'm talking about the reality, the reality that you put guards on that place up there that were absolutely unqualified and the reality that you got someone to represent to the government or to whomever, whether or not it's an inspector or whatever, to put on something that these people are okay. I want to concede that the fact pattern you describe is a fraudulent scheme. There are lots of cases with appalling fraudulent schemes. So how do we get to hold somebody responsible here? This is a dismissal without prejudice. So I assume that still could be come up. So what are you telling me? Didn't they do something? Is it they did not put the right document in it to show that the contract required these guards to be qualified? And is that the problem? What you have to have is something more in the False Claims Act. You can have a fraudulent scheme that is alleged to be appalling. You've got to figure out what that is because there's no way in the world we can, as a court or anybody in this country, allow a contractor to do what these facts indicate here because that's a problem. And we cannot write an opinion that says, okay, everything that's here you can have people come up and put down wrong-type things. You can get the wrong guards to put on a base for millions of dollars and then submit an invoice to get hundreds of thousands of dollars for people who absolutely have no qualifications. Now, I'm just dealing with the basic facts of it. I understand you're dealing with your case, and we're going to decide this on a legal basis. But I'm telling you why this case presents an interesting and horrible fact scenario. Because you are representing here, judge, make this as legal as possible. Require there's a certification. Even if there is one, that's not going to be enough. And when we show, as a result of these facts, that we did something wrong here and we put those guards up there and we took money for them and we knew the government cared about it because we went and got someone to sign over here to falsify it, couldn't there be some sense of outrage that comes from this, law notwithstanding? The outrage can go to the fraudulent scheme. It can go to cure notices. It can go to other types of ways you can remedy that scheme. Those, as you describe them, horrifying facts are why this… You're just saying something is wrong here, but the government hasn't filed the right stuff. They haven't filed a False Claims Act allegation. There's something else they could file. According to them, they can't, Your Honor, because they can't go back and do it. So nothing can be filed? No, Your Honor. They can do a cure notice. They can do a breach of contract claim. They can proceed in many other types of forms. There's no remedy to this is where I'm going. There is a remedy. They can sue and get the money back if they think the contract was violated. That's not what they did. Money? We're talking about protecting soldiers and people overseas. I don't think money is the issue here. Well, Your Honor, you're assuming that every single allegation in this complaint is true. I'm assuming if you can do this, someone else can't. It's a contract violation, nevertheless. I understand. I'm assuming if you've done this, this is a blueprint for how to go somewhere, grab someone off the street. It's not a question of whether or not they're Ugandan, because there are certainly Ugandan soldiers who could qualify for anything. They just went and grabbed someone and stuck them up there with rifles in their hands. It could have been Americans. They'd do the same thing. But the question is, you know why you have this $9 million contract, and you know who's otherwise let the Marines defend the base, which I quite frankly don't understand why that's not done, but I guess there are international reasons. Your Honor, we're here because of that reaction to these facts, because if you ever were going to look at a contract violation that is on its face, legally nothing more than one element out of 20 contract violations, just legally that's all there is, and they're going to ask you at the Fourth Circuit to make a new law about the False Claims Act to fit it. You ever want to bring a set of bad facts up here? You know what bad facts sometimes are. I do, and I'm urging you not to go there. Bad facts in this case. But you say there are some first impression issues here, and maybe we need to take a look at those first impression issues. But you were in front of a judge who didn't find the facts bad enough, so just because the facts are bad doesn't mean that you're going to lose. It's an application of law. Because if you do this. And what do you think is the one single biggest flaw in the government's assertion that this is false claims? What is the one thing? They brought a false claims act case without a false claim in it, Your Honor. They could have brought a different kind of case. They could have gone for a different remedy. But that's just sort of captions. Why is this not a false claim? Tell me why it's not. The invoice. I'm focusing on the invoice. Why is that not a false claim? Tell me why that's not. Because it doesn't include a falsehood. You cannot say that guards are not guards because one of 20 wasn't made. Oh, I see. So breaching one thing isn't enough. It can't be, Your Honor. If it was, you'd be in a worthless services context, and we're clearly not there. There are 19 of 20 that aren't even alleged. They failed that. You don't hinge your argument, then, that there is no implied certification in the invoice. You don't argue that point? I don't think there is any. I thought you were going to say there was no certification at all. Your Honor, there's no express certification. There's no implied certification. There's no precondition of payment. But your biggest argument, I ask you, your biggest point is to breach one out of 23 things, it doesn't make it a false claim. That and this, Your Honor. Okay, I'm going to give you another 15 seconds to tell me because I'm going to make him answer to it. Here's your chance to make him answer to your argument. What is the single biggest flaw in their False Claims Act case? I think it's that a false statement is false when uttered, and a fraud is an allegation when it's heard. And they can't allege for you time, place, and content of the hearing here. And they're telling you, we don't even have to try to. Please just waive that off. Okay, thank you very much. Thank you. Mrs. Garber, you've heard what they see as a flaw in your case. I understand, Your Honor. And the import of their positions. Let me ask you specifically before you get started. If, is it the government's theory, if the contractor submits their claim for payment and they know that any of the bullet items, 20-some bullet items on JA-99 have not been met, is that a false claim or a breach of contract? That's a false claim, Your Honor, if they know that they haven't satisfied those things, which are conditions of payment. Yes, they're conditions of payment of the contract. And so, yes. Is there any provision that's in that, whatever they call it, statement of work? I haven't focused on all the different things, but actually it's all on one page, JA-99. No, but there are other provisions in that contract. I understand. Is it only the ones that are under Section 5? I'm not sure whether there aren't other conditions. The notion that, like, just because there are a lot of conditions. I'm trying to differentiate between what's a breach of contract and what's a false claim. So, let's say if we looked at Section 12, unauthorized items, the contractor has to have a letter of authorization. Where's Section 12? I'm sorry, Your Honor. Section 12 of that page 102. And they don't have a letter of authorization, and they don't know, and the contractor knows they don't have a letter of authorization for the guards to have cameras on the base. Is that breach of contract or false claim? I don't think the distinction between breach of contract and false claim is the relevant distinction. I think the question is you're asking whether it is a condition of payment, whether the government could withhold payment if that has been breached. And the distinction between contract breach, mere contract breach, which they keep sort of using that terminology, and a False Claims Act violation is when you knowingly do it and you know that the government cares about it. And part of the reason why we're focusing on the falsified marksmanship scorecards is that's one indication that they know. But why wouldn't the government care about every provision in the contract? Well, government does, and that's why I answered the question at the beginning, yes. There's no distinction between a breach of contract and false claims in your opinion. I can't answer it that way because there is. But the distinction you're – I asked you is there a distinction between breach of contract and false claim. Yes, Your Honor, and the distinction is knowledge. And what is that distinction? It's knowledge of what you're doing and knowledge of the fact that it matters to the government. In other words – That matters to the government, is that materiality? Yes, that's the element of materiality. But you could have provisions in the contract that aren't material? I think, Your Honor, that we have to recognize that there – That would be a yes or a no. Yes, I do believe that's possible, Your Honor. It doesn't hurt you to say that. I'm sorry? It doesn't hurt you to say that. And that's why I'm saying it, Your Honor. But apparently you thought so because I had trouble getting it out of you. Well, maybe I'm just moving slowly today. No, you're not moving slowly. The point is when you know that the government cares about it, you don't lie about – let me put it this way. You don't lie about things you know the government doesn't care about. If there were some innocuous things – Oh, they might. You might lie about something. You might. But we don't – That's not the test. The test is – You might lie about something that's not material because you want, you know, one of those government defense contractors awards. Who knows about all that stuff? But you think the distinction between a breach of contract and a false claim, when you ask for payment under the contract – I'm talking about two different provisions of the contract. I think you think it's materiality. No, I think it's knowledge, Your Honor. You know that you're violating the contract. What about you know that you don't – that you haven't got the authorization letter? You know you haven't got – Yes, that would be a false claims violation. Yes, Your Honor. I am agreeing with that. And I'm sorry if I'm being unclear. So anytime you breach the contract – Express provision, yes. Right. And you could – And the government could withhold payment because of that, and that's because it's an express contract. Government withhold payment for every provision of a contract. And that's the only place where I equivocated because I do think that – and this is part of contract law – that there are provisions that are so insignificant that you would not, say, go to the very essence of what the government contracted for. We are so far away from that here. There's no question that it is significant that God's equality – Absolutely, Your Honor. That's what I'm trying to say. Our United States soldiers who are overseas on bases, and the fact that you know that, and you've got to believe that's important to the government. There might be some things in that contract that are not significant. Yes. What uniforms they wear. Yes. What time they get up in the morning. But the fact that the very basis for them being there to stand out with a gun and to defend them from people who will come in, if that's not there and you go and ask for money for people who are doing that, that's got to be material. Yes, Your Honor. I don't think anybody in this courtroom believes otherwise. I agree, Your Honor. And what I would add to that is that if you can – It's not a question of what is material on the top end. It's the question we were probing with you, what is the distinction from the government between a provision that clearly is material and one that isn't? Right. Because you have to write the case and you have to set the law. You're doing very little to help us understand. Your argument is anything in that contract is presumptively false. No. No, Your Honor. The statute defines materiality, and we're relying on the statute. We're relying on the court. Wait. I asked you about materiality. That's what I asked you about ten questions ago. I'm trying to – Does it hinge on materiality? Yes, but then the question that I think I maybe got sidetracked on was when you asked the distinction between contract and a False Claims Act action. And the question there is knowledge there. That's what distinguishes those two things. Can I just say one more thing? Knowledge of a material matter or knowledge of any matter? Knowledge that you're violating a contractual requirement and you're nonetheless saying government pay me, even though you know that you shouldn't be eligible for payment. Okay. Just let me ask one more time. Do you think the key is your knowledge or your knowledge of a material breach? It is your knowledge. Okay. And can I just say one more thing? Sure. I'll give you ten seconds. Ultimately, their side boils down to, if you're clever enough to avoid saying anything false on the face of the invoice, then you can avoid False Claims Act liability. That is not the law. There are numerous cases, including this court's decision in Harrison, that hold that. Thank you. Thank you very much. I appreciate the argument. Tomorrow we'll step down great counsel and go to the last argument for the day.
judges: Dennis W. Shedd, G. Steven Agee, James A. Wynn, Jr.